UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SCOTT SEDORE,                                          Case No.: 19-10311

           Plaintiff,                            Stephanie Dawkins Davis

v.                                                     United States District Judge

MARY GREINER, M.D., *et al.*,                          R. Steven Whalen

           Defendant.                            United States Magistrate Judge

_____/

## REPORT AND RECOMMENDATION

On January 25, 2019, Plaintiff Scott Sedore, a prison inmate in the custody of the Michigan Department of Corrections ("MDOC"), filed a *pro se* civil complaint under 42 U.S.C. § 1983, based on events alleged to have occurred while he was detained at the Gus Harrison Correctional Facility.  Before the Court is Defendants Corizon Health, Inc. ("Corizon"), Mary Greiner, and Rosilyn Jindal's Motion for Partial Summary Judgment for failure to exhaust administrative remedies, (ECF No. 43), which has been referred for a Report and Recommendation under 28 U.S.C. § 636(b)(1)(B). For the reasons discussed below, I recommend that the motion be **GRANTED IN PART, DENIED IN PART**.

## I.  FACTS

1

After summary dismissal of some of the claims in Plaintiff's complaint, what remains are his claims of inadequate medical care and accommodations while housed at the Gus Harrison Correctional Facility ("ARF") between August 7, 2017 and May 30, 2018.  (ECF No. 1, 10).  According to Plaintiff, Corizon and his prison medical providers deliberately limited, delayed, and denied him necessary medical care and refused to seek appropriate pain management for him.  (ECF No. 1, PageID.17).  Plaintiff alleges that Corizon has policies, practices, procedures, and customs in place which aim to deny necessary treatments to save money.  (*Id.* at PageID.19).  Defendants Greiner and Jindal worked with Corizon to carry out this goal.  Plaintiff's more specific claims against the moving Defendants are as follows.

- Count 1 – Plaintiff was denied his two high protein drinks per day while at ARF;

- Count 2 – Defendants delayed taking him to an orthopedic surgeon, he suffered chronic pain as a result;

- Count 3 – Defendants delayed taking him to the neurosurgeon;

- Count 4 – Diagnostic testing, surgery, treatments recommended by specialists are not being followed.  Greiner and Jindal acted outside the scope of their training by delaying or refusing to follow the recommendations;

- Count 6 – Defendants have policies, procedures, practices in place to give out defective/broken daily assistive living devices;

2

- Count 8 – On October 25, 2017 Plaintiff had an appointment with Defendant Dr. Greiner; Greiner was unprofessional and refused to seek referrals for medical testing, surgery, pain management, and refused to assess his severe pain and his need for assistive devices. Greiner put Plaintiff at risk of getting injured;

- Count 9 – On November 13, 2017, Plaintiff had an appointment with Defendant Jindal.  He tried to discuss with her his need for assistive devices and accommodations and asked her to re-submit paperwork for the MDOC pain committee.  She told him to discuss those issues at an upcoming appointment with Dr. Greiner;

- Count 10 – At his November 16, 2017 appointment with Dr. Greiner, Greiner retaliated against him for filing a grievance against her, and refused to address his chronic pain and his need for assistive living devices; she also cancelled accommodations for a room aide and extra cotton blankets;

- Count 15 – On January 22, 2018, Plaintiff asked Jindal why there was a delay in receiving the hip surgery that had been recommended, and discussed with her his chronic pain.  Jindal refused to address his issues but said she would put in a referral to the MDOC pain committee;

- Count 16 – Jindal changed his Albuterol prescription without telling him, changing it so that he could get a refill only every three months, not every month, in order to save money for Corizon.  Plaintiff was forced to go two months without his inhaler and experienced breathing problems as a result;

- Count 17 – On February 13, 2018, Plaintiff discussed with Jindal the MDOC pain management committee "(Jane/John Doe)" recommendation to put him on Cymbalta to treat his pain.  Plaintiff refused to take Cymbalta because the first time he was on the medication he lost 85 pounds in less than six months.  This reaction was documented in his medical records, both Jindal and the pain committee knew of this history.  He was not prescribed an alternative pain medication;

3

- Count 18 – He cannot use his CPAP machine at night because he tosses and turns all night due to the chronic pain in his back, hips, legs, and knees;

- Count 21 – On April 18, 2018, Jindal again refused to address complaints of pain and the need for accommodations;

- Count 23 – Defendants went "doctor shopping" to find a doctor who would give them the answers they were looking for so they could save money on surgery on his right hip;

- Count 31 – Defendants refused to acquire a "comprehensive set" of medical records.

(*Id.* at PageID.44-50, 53).

## II. STANDARD OF REVIEW

### A. Summary Judgment

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). To prevail on a motion for summary judgment, the non-moving party must show sufficient evidence to create a genuine issue of material fact. *Klepper v. First American Bank*, 916 F.2d 337, 341-42 (6th Cir. 1990). Drawing all reasonable inferences in favor of the non-moving party, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty*

4

*Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celetox Corp. v. Catrett*, 477 U.S. 317, 322 (1986). When the "record taken as a whole could not lead a rational trier of fact to find for the nonmoving party," there is no genuine issue of material fact, and summary judgment is appropriate. *Simmons-Harris v. Zelman*, 234 F.3d 945, 951 (6th Cir. 2000).

Once the moving party in a summary judgment motion identifies portions of the record which demonstrate the absence of a genuine dispute over material facts, the opposing party may not then "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact," but must make an affirmative evidentiary showing to defeat the motion. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989). The non-moving party must identify specific facts in affidavits, depositions or other factual material showing "evidence on which the jury could *reasonably* find for the plaintiff." *Anderson*, 477 U.S. at 252 (emphasis added).  If the non-moving party cannot meet that burden, summary judgment is proper. *Celotex Corp.*, 477 U.S. at 322-23.

## B. Exhaustion

5

Under the Prison Litigation Reform Act (PLRA ) of 1996, specifically 42 U.S.C. § 1997e(a), "[n]o action shall be brought with respect to prison conditions under § 1983 ... by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." The exhaustion requirement is mandatory and applies to all suits regarding prison conditions, regardless of the nature of the wrong or the type of relief sought. *Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731, 741 (2001). Furthermore, "exhaustion" under the PLRA means "proper exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 92 (2006). In *Woodford*, the Supreme Court defined "proper exhaustion" as requiring "compliance with an agency's deadlines and other critical procedural rules...." *Id.*, 548 U.S. at 90.

A dismissal for failure to exhaust is without prejudice. *Knuckles El v. Toombs,* 215 F.3d 640 (6th Cir. 2000); *McCloy v. Correctional Medical Services*, 794 F.Supp.2d 743, 751 (E.D. Mich. 2011).

In *Jones v. Bock,* 549 U.S. at 214, the Supreme Court suggested in dicta that failure to exhaust might be a basis for dismissal under Rule 12(b)(6). However, in *Pointer v. Wilkinson*, 502 F.3d 369 (6th Cir. 2007), the Sixth Circuit found that a dismissal based on exhaustion may be distinct from a dismissal for failure to state a claim upon which relief may be granted. *See also Snider v. Melindez,* 199 F.3d 108, 112 (2d Cir. 1999) (concluding that failure to state a claim as used in §

6

1997e(c) and § 1915(g) does not include failure to exhaust administrative

remedies). In *Melton v. Michigan Corrections Commission*, 2009 WL 722688

(E.D. Mich. 2009), the Court granted a motion for summary judgment, dismissing

the complaint without prejudice for failure to exhaust. In the present case, the

Defendants have framed their request as a motion for summary judgment, and I

will address it as such.

## III. DISCUSSION

The MDOC's Policy Directive dated July 9, 2007 prescribes the three-step

administrative exhaustion process for grievable matters.  (ECF No. 43-2, MDOC

Policy Directive 03.02.130).  At Step I, a prisoner must "attempt to resolve the

issue with the staff member involved within two business days" and, if

unsuccessful, must file a grievance within five business days.  *Id.* at ¶ P, V.  If the

inmate is dissatisfied with the disposition of the grievance, or does not receive a

response ten days after the due date, he or she may file a Step II grievance using

the appropriate form.  *Id.* at ¶ BB.   Similarly, if the inmate is dissatisfied with the

Step II response or does not receive a response for ten days after the response was

due, he or she may file a Step III grievance.  *Id.* at ¶ FF.

Defendants agree that Plaintiff fully exhausted the following claims:

> (1) Defendants failure to provide his high protein drink
> (2) Dr. Greiner and PA Jindal allegedly causing a delay
> in seeing an orthopedic surgeon (3) Dr. Greiner and PA
> Jindal allegedly causing a delay in seeing a neurosurgeon

7

> (4) Dr. Greiner's decision to cancel his accommodation for aide and extra blanket, and (5) PA Jindal changing his albuterol inhaler without informing him.

(ECF No. 43, PageID.614).  Defendants contend that Plaintiff's remaining claims were not properly exhausted.  Defendants argue that five of Plaintiff's grievances appealed through Step III, discussed below, do not exhaust administrative remedies because of some procedural defect.  They also argue that in some grievances Plaintiff did not name Greiner and Jindal specifically, and thus those grievances do not exhaust claims against them.

## A.      Grievance ARF-2017-09-2157-28A ("2157")

According to Defendants, the issues in grievance 2157 are not exhausted because this grievance was rejected as duplicative of grievance ARF-2017-09-2154-12D ("2154").  Plaintiff filed grievance 2157 against the Director of MDOC and "Corizon Inc. medical providers and Administrators," complaining that there were policies and procedures in place to delay or deny necessary medical treatments.  In this particular instance, Plaintiff was challenging the denial of further testing for his polyneuropathy.  (ECF No. 43-1, PageID.811).  The grievance was rejected at Step I because it was considered a duplicate to grievance 2154.  (*Id.* at PageID.812).  This rejection was upheld and Steps II and III.  (*Id.* at PageID.808, 810).

Plaintiff filed grievance 2154 against Corizon Inc. and "its medical providers" for their failure to schedule his back or spinal surgery.  According to Plaintiff, prior to being housed at ARF, he was cleared by a neuropsychologist for the surgery, yet his surgery was not scheduled.  (*Id.* at PageID.800).  The Step I grievance respondent recognized this as a grievance about "lack of health care response for surgery."  (*Id.* at PageID.801).  This grievance was exhausted through all three steps.[1]

MDOC policy forbids grievances that raise "issues that are duplicative of those raised in another grievance filed by the grievant."  (ECF No. 43-2, PageID.819, ¶ G).  But, the prison's rejection of a grievance as duplicative does not decide the issue as a matter of law.  "[T]o carry their summary-judgment burden, Defendants must compare the issues grieved in the first grievance to those grieved in the [] allegedly-duplicate grievances and show that every reasonable jury would think the rejections were proper."  *Johannes v. Washington*, 2016 WL 1253266, at *6 (E.D. Mich. Mar. 31, 2016); *see Johnson v. Corr. Med. Servs., Inc.*,

---

[1] As will be discussed below, Defendants contend that this and other grievances did not exhaust remedies against Jindal and Greiner specifically because they were not named in the grievances.  To the extent Defendants believe grievance 2154 is not exhausted, they are wrong.  This grievance was taken through all three steps of the process without any stated procedural defect.  The grievance was denied at Steps I and II after prison officials investigated the merits of the allegations.  (ECF No. 43-1, PageID.799, 801).  There was nothing more Plaintiff could have or should have done to exhaust his remedies.

2008 WL 878767, at *5 (W.D. Mich. Mar. 3, 2008) (finding grievance not properly rejected as duplicative); *Bowers v. Burnett*, 2009 WL 7729553, at *9 (July 27, 2009) *report and recommendation adopted*, 2011 WL 1047343 (W.D. Mich. Mar. 18, 2011) (same).

Defendants did not undertake a comparison of the grievances. Upon review of both grievances, I find that, although both grievances relate to the medical specialty of neurology, 2157 is not duplicative of 2154. The former complains of the failure to schedule back surgery, while the latter is about diagnostic testing on polyneuropathy—two different issues. In light of these differences, Defendants have not carried their burden of demonstrating that the rejection of 2157 as duplicative was proper. Accordingly, I conclude that this grievance should be considered to fully exhaust the back surgery/neurosurgeon claim.

### B. Grievance ARF-2017-10-2557-28A ("2557")

Defendants assert that the issues alleged in grievance 2557 are not exhausted because "it was rejected at Step III in accordance with PD 03.02.130." (ECF No. 43, PageID.610). They did not elaborate on this argument.

Plaintiff grieved Defendant Dr. Greiner for being deliberately indifferent to his serious medical needs. He included some examples, among them being that Greiner refused to address his accommodation needs, the need for medical treatment, and failed to address his pain management needs**.** (ECF No. 43-1,

PageID.787-88).  According to the Step II response form, an investigation was conducted at Step I (the Step I response is not in the record).  The grievance was denied because medical records confirmed that a referral had been sent to the Pain Management Committee.  The grievance was denied at Step II after investigation for the same reason.  (*Id.* at PageID.787).  At Step III, the "rejection [was] upheld." (*Id.* at PageID.785).  Since Plaintiff took this grievance through all three steps, and the grievance was not rejected for any procedural issue listed in the policy directive (*see* ECF No. 43-2, PageID.819, ¶ G), it is unclear on what basis Defendants believe the grievance is not fully exhausted.  Defendants have not met their burden of demonstrating non-exhaustion.  This grievance is fully exhausted.

### C.  Grievance ARF-2018-01-0256-28B ("0256")

This grievance was rejected at Step I as vague; the respondent found the grievance vague "as to what the main issue is or who you are grieving."  (ECF No. 43-1, PageID.743).  This rejection was upheld and Steps II and III.  (*Id.* at PageID.739, 741).  The Step I grievance is a general claim against multiple prison entities, including Corizon and employees Greiner and Jindal for delaying or denying adequate medical care.  He complains that the entities and individuals named are not qualified or trained, that they provide untimely care and screening/diagnostic testing, that they have policies or customs in place to deny care, and that they limit off-site treatment.  (*Id.* at PageID.742, 744-45).  He

concludes that the medical care he was receiving was deliberately indifferent to his medical needs in violation of the Eighth Amendment. Plaintiff did not discuss any particular medical issue or treatment in this grievance.

As explained in *Nelson v. Walsh*, 2017 WL 1212836, at *4 (E.D. Mich. Feb. 17, 2017), *report and recommendation adopted*, 2017 WL 1100945 (E.D. Mich. Mar. 24, 2017), when completing a grievance, prisoners are required to concisely state the issues they are alleging and include the "[d]ates, times, places, and names of all those involved in the issue being grieved." *Id.* (quoting 03.02.130 at ¶ R). "Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how)." *Id.* (emphasis in original).

Plaintiff's grievance lacks specificity to the extent that he appears to complain that *all* of his medical care had been inadequate, rather than identifying specific medical issues and treatments he believes were inadequate. Plaintiff listed a host of persons or entities grieved, from Corizon to MDOC Administration and pain committee, and Defendants Greiner and Jindal among others. So, while Plaintiff gave the names of those involved (the "who"), he provided only a conclusory statement that he was being denied adequate medical care (the "what"). "[T]he purpose of the PLRA's exhaustion requirement 'is to allow prison officials a fair opportunity to address grievances on the merits, to correct prison errors that can and should be corrected and to create an administrative record for those

12

disputes that eventually end up in court.'"  *Mattox v. Edelman*, 851 F.3d 583, 591

(6th Cir. 2017) (quoting *Reed-Bey v. Pramstaller*, 603 F.3d 322, 324 (6th Cir.

2010)).  Plaintiff's grievance, as written, would unrealistically require prison

officials to review and address Plaintiff's entire medical record.  Because Plaintiff

did not comply with the Policy Directive, ¶ R, he did not properly exhaust a

general claim of Eighth Amendment deliberate indifference.

   Plaintiff argues that this grievance should be considered fully exhausted

because prison officials did not follow the prison's operating procedures.  More

specifically, he says prison officials were required to return to him any grievance

that was not appropriately completed under the prison's Operating Procedure,

before assigning a grievance identifier.  (ECF No. 47, PageID.920 – MDOC

Operating Procedure 03.02.130).  Accordingly, Plaintiff argues that since prison

officials thought the grievance to be vague, and thus not "appropriately

completed," the grievance should have been returned to be fixed, not given an

identifier and rejected under the MDOC grievance Policy Directive.  Plaintiff

characterizes the prison's error as rendering exhaustion "unavailable" because he

was not given an opportunity to correct the grievance.  (ECF No. 47).

   While the operating procedures document attached to Plaintiff's response

brief explains the grievance process, it is the prison's grievance procedure that

controls and prescribes the steps the prisoner must take through the grievance

process.  As stated above, in *Woodford*, the Supreme Court defined "proper exhaustion" as requiring "compliance with an agency's deadlines and other critical procedural rules...." 548 U.S. at 90.  The policy directive directs prison officials to reject a grievance that is vague.  (ECF No. 43-2, PageID.819, ¶ G).  The policy directive does not require that the allegedly vague grievance be returned without an identifier to be corrected.  And, in any event, it is not clear under the Operating Procedure that a grievance considered to be vague is not "appropriately completed."  To be complete is to have "all necessary parts, elements, or steps." *Complete*, Merriam-Webster at https://www.merriam-webster.com/dictionary/complete.  A Step I grievance could have all necessary parts or elements, but be vague as to the claims.  Thus, it is not clear that a "vague" grievance is not an "appropriately completed" grievance.

Because this grievance is vague, and was properly rejected as such, this grievance does not exhaust administrative remedies.  Despite this conclusion, it is not clear that any particular claim must be dismissed without prejudice.  Plaintiff did not lodge a general deliberate indifference claim as stated in this grievance. Each of his claims addresses a discrete medical issue.  Consequently, although I recommend that this grievance be deemed unexhausted, I do not recommend that any specific claim be dismissed.

### D.  Grievance ARF-2018-02-0477-28A ("0477")

According to Defendants, this grievance is unexhausted because it was properly rejected as duplicative of grievance 0256, the grievance discussed above. (ECF No. 43, PageID.611).  Defendants' argument, however, does not correctly track the documents relating to 0477.  Upon review of the grievance documents, it does not appear that 0477 is duplicative of any other grievance in the record.

Plaintiff filed the Step I grievance on February 13, 2018.  The grievance is about his discussion with Jindal about the MDOC pain committee's recommendation that he take Cymbalta for his chronic pain.  He refused to take the medication because it did not work the first time he was on the medication and he suffered weight loss as a side effect.  He accused Jindal and the pain committee of being deliberately indifferent to his pain and suffering.  (ECF No. 43-1, PageID.736).  The grievance was rejected as duplicative of ARF-2018-02-496-28G, *not grievance 0256*.  (*Id.* at PageID.737).

In his Step II appeal, Plaintiff explained that he never filed a grievance given that identifier, and rightly questions how 0477 could be duplicative of a grievance he never filed.  Plaintiff did not address this issue in his response brief.  What is equally confusing is Defendants' assertion that 0477 is duplicative of 0256—the vague, general grievance about inadequate medical care discussed above.  The prison did not address at Steps II or III Plaintiff's claim that he never filed a

grievance identified as ARF-2018-02-496-28G.  Upon review of the Step III

Grievance Report, there is no grievance identifier ARF-2018-02-496-28G.  (ECF

No. 43-1, PageID.617-33).  It is possible that such a grievance exists, but was not

appealed to Step III, and so would not be included in the Step III report.  But all

inferences must be drawn in Plaintiff's favor.  A reasonable inference here is that

Plaintiff did not file ARF-2018-02-496-28G.  Accordingly, the prison's rejection

of 0477 as duplicative is erroneous.

Defendants did not utilize their reply brief to explain their 0256 argument.

As stated above, it is Defendants' burden to demonstrate that this grievance is in

fact duplicative of the allegedly-duplicative grievance.  Defendants have not met

their burden here, as neither they nor the grievance respondents identified a

grievance which is duplicative of 0477—a grievance about Cymbalta and side

effects is not duplicative of 0256.  Based on the evidence in the record, no

reasonable jury could conclude that 0477 does not exhaust administrative remedies

on Plaintiff's claims.

### E.  Grievance ARF-2018-03-0805-28c

This grievance, directed at Corizon, Greiner, and Jindal, is that Plaintiff

cannot use his CPAP machine for sleep apnea because of his medical providers'

refusal to address his many medical needs.  Plaintiff complained that he was not

getting prolonged sleep, with or without the CPAP machine, because he was "up

and down all night" due to his medical issues.  (ECF No. 43-1, PageID.719).  In his

Step II appeal, Plaintiff made it clear that his grievance was not just about the

CPAP machine.  He was concerned about a series of events: his untreated medical

issues caused him to be unable to use the CPAP machine at night, which failure

could lead to further medical issues because of the drop in oxygen levels.  (*Id.* at

PageID.717).  The grievance was addressed and denied *on the merits* at Steps I and

II.  (*Id.* at PageID.718, 720).  Plaintiff essentially reiterated his complaints in his

Step III appeal.  Instead of addressing the merits for a third time, prison officials

rejected the grievance at this step, stating that it was "rejected as Multiple Issues

listed on the grievance.  Multiple issues presented within the same grievance."  (*Id.*

at PageID.716).  Plaintiff did not raise any new issues in his Step III appeal.

Because it was rejected at Step III for this procedural error, Defendants view this

grievance as unexhausted.

The fact that the prison did not reject this grievance for a procedural error

that existed, if at all, at all three steps until the final step is troubling.  The Sixth

Circuit in *Reed-Bey v. Pramstaller*, 603 F.3d 322 (6th Cir. 2010), "set forth a

simple rule: if those charged by the MDOC to screen grievances overlook or

forgive a procedural defect and process a grievance on its merits, MDOC officials

cannot be heard to complain about that defect in later litigation." *Johannes v.*

*Washington*, 2016 WL 1253266, at *10 (E.D. Mich. Mar. 31, 2016) (citing *Hollins*

17

*v. Curtin*, 2015 WL 1458944, at *11 (Feb. 24, 2015) ("As the Sixth Circuit has

made clear, if prison officials decline to enforce their own procedural rules

regarding the proper filing of prison grievances, and instead address a grievance on

the merits, prison officials cannot later seek to enforce, in a judicial proceeding, the

procedural rule in question.")).

It appears that the Sixth Circuit has not addressed waiver in a case such as

this—where the prison addressed the merits at the first two steps and did not raise

the procedural defect until Step III.  As a matter of policy, it would be unfair to

allow prion officials to address the merits of a prisoner's grievance, but then reject

the grievance for a procedural error that existed throughout the process at the final

step, where the prison official has the last word.  The more reasonable approach to

take here is that in cases such as this, the prison should be deemed to have waived

the defect.  Put another way, "when MDOC officials shift their rationale in denying

a grievance from a purely merit-based determination to a procedural defect at the

final step in the grievance process, the defect has been waived, thus exhausting the

claim for purposes of federal suit."  *Raper v. Controneo*, 2018 WL 2928188, at *3

(W.D. Mich. June 12, 2018); *see also Abbruzzino v. Hutchinson*, 2009 WL 799245

(E.D. Mich. Mar. 24, 2009) (Holding that the prison could not rely on an alleged

procedural defect at Step III where it addressed the merits of the grievance at Steps

I and II).  Accordingly, I find that because MDOC prison officials waited until

18

Step III to raise the procedural defect, the defect has been waived.  This grievance

is fully exhausted.

### F. Failure to Name

Defendants argue that among some of the grievances which Plaintiff fully

exhausted—grievances with identifiers 1875, 2154, 2157, and 0114—Plaintiff did

not exhaust those claims against Griener and Jindal specifically because he only

named "Corizon medical providers" in those grievances.  (ECF No. 43,

PageID.611-12).  "[T]o properly exhaust administrative remedies prisoners must

'complete the administrative review process in accordance with the applicable

procedural rules,'—rules that are defined not by the PLRA, but by the prison

grievance process itself."  *Jones*, 549 U.S. at 218 (quoting *Woodford*, 548 U.S. at

88).  The MDOC grievance rules require a prisoner to include the "[d]ates, times,

places, and *names* of all those involved in the issue being grieved" in his

grievance.  MDOC Policy Directive 03.02.130 ¶ R (July 2007) (emphasis

added).  However, failure to name an individual later sued is not necessarily fatal

to a prisoner's suit so long as prison officials had fair notice of the claim raised

against the defendants such that there is an opportunity to resolve it.  Indeed, while

the grievance procedure may promote early notice to those who might later be

sued, that has not been considered one of the leading purposes of the exhaustion

requirement.  *Moffat v. MDOC*, 2010 WL 3906115, *7 (E.D. Mich. 2010) (citing

*Jones*, 549 U.S. at 219); *Johnson v. Johnson*, 385 F.3d 503, 522 (5th Cir. 2006)

("We are mindful that the primary purpose of a grievance is to alert prison officials

to a problem, not to provide personal notice to a particular official that he may be

sued; the grievance is not a summons and complaint that initiates adversarial

litigation").

> But, at the same time, the grievance must provide administrators with a fair opportunity under the circumstances to address the problem that will later form the basis of the suit, and for many types of problems this will often require, as a practical matter, that the prisoner's grievance identify individuals who are connected with the problem.

*Johnson*, 385 F.3d at 522.

Plaintiff did not name Greiner or Jindal in the grievances identified by

Defendants.  Plaintiff argues, among other things, that his failure to specifically

name them should not mean that those grievances did not exhaust claims against

them.  Where he listed "Corizon medical providers" in his grievances, he says he

did so because he did not know Greiner's and Jindal's names when he wrote the

grievances.  And, importantly, he asserts in his brief that Greiner and Jindal were

the only two medical providers at the Gus Harrison Facility, implying that it would

not have been difficult to identify the "Corizon medical providers" he was

referring to.  Though his assertions do not come in the form of an affidavit, he

signed his response brief under penalty of perjury.  (ECF No. 47, PageID.913,

20

914).  Defendants have not disputed Plaintiff's assertion that Greiner and Jindal

were the only two medical providers at the prison during the events described in

this case.  And in any event, there would be a question of fact as to whether they

were the only two providers, and thus whether the prison had "fair notice" of

Plaintiff's claims.

　　　　Notwithstanding the mandate that the prisoner name all those involved in the

complained-of incident, failure to name can be excused if it is obvious from the

facts alleged in the grievance that the defendants were involved and the prison had

the opportunity to address the claims.  *Calhoun v. Hill*, 2008 WL 4277171, at *3

(E.D. Mich. Sept. 17, 2008); *Binion v. Glover*, 2008 WL 4097407, at *3-4 (E.D.

Mich. Aug. 29, 2008).  And, identifying a subject of the grievance by title, rather

than by name, can be adequate to give prison officials notice of the claim.  *Beedle

v. DeMasi*, 2006 WL 2700753, at *3 (E.D. Mich. Sept. 18, 2006).  As an initial

matter, accepting Plaintiff's sworn, unchallenged statement that Greiner and Jindal

were the *only two Corizon medical providers* at the prison, it seems obvious that

any reference made in a grievance to "Corizon medical providers" meant that

Greiner and Jindal were targets.  If not obvious from the face of the grievances, at

most it would take minimal amount reasonable effort to ascertain the identify the

only two medical providers in the prison.  Moreover, Plaintiff's reference to the

"medical providers" seems akin to identifying them by title, in light of the accepted

fact (for purposes of this motion) that Greiner and Jindal were the only two medical providers in the building.  For these reasons, the reference to "Corizon medical providers" in grievances 1875, 2154, and 2157 serves to exhaust claims against Greiner and Jindal.

In addition to naming "medical providers" in these grievances, the facts alleged in the grievances give more information about the persons alleged to be involved.  The claims in 2157 and 2154 were discussed above: 2154 is about the failure to schedule back surgery, while 2157 is about diagnostic testing on Plaintiff's polyneuropathy.  In both grievances, Plaintiff alleges that the entities and medical providers had a policy or practice of denying or delaying care, and specifically denying back surgery and polyneuropathy testing.  Because Plaintiff named "medical providers" in these grievances and complained that his medical providers were delaying or denying the sought-after care, it is obvious that Plaintiff intended to complain about the conduct of Greiner and Jindal, as well as the other entities named in the grievance.  Notably, in grievance 2154, Plaintiff wrote that the solution would be to have his medical provider process and submit the necessary paperwork to proceed with the back surgery.  (ECF No. 43-1, PageID.800).

Grievance ARF-17-08-1875-12B is a complaint that Plaintiff was not getting his two high-protein drinks since arriving at ARF despite having a medical detail to

22

get those drinks three times per day.  He submitted this grievance the day after he

arrived at ARF—August 8, 2017.  He wrote that he spoke to several nurses about

his drinks.  He accused "Corizon Inc. and Corizon medical providers" and others

of acting with deliberate indifference and violating the Americans with Disability

Act; he asserted that they had policies in place to deny medical treatment to save

money.  (ECF No. 43-1, PageID.816).  He alleged that one nurse wrote a detail for

the drinks twice a day, rather than three times a day, and another nurse essentially

told him there were prisoners who needed the drinks more than he did.  The

responses indicate that the medical detail was in place and that Plaintiff had an

upcoming appointment with his medical provider.  (*Id.* at PageID.813, 815).

   To begin, in their opening brief Defendants conceded that Plaintiff's claim

that "*Defendants* failure to provide his high protein drinks" is exhausted.  (ECF

No. 43, PageID.613) (emphasis added).  However, just before this concession, they

argued that this grievance—about the high protein drinks—does not exhaust as to

Greiner and Jindal.  Their arguments are contradictory.  Second, prison officials

were not left completely unaware of who Plaintiff believed was being deliberately

indifferent to his medical needs.  An indicator that officials knew the medical

providers were part of the allegations, at Step II the investigator spoke to Plaintiff's

medical provider—either Greiner or Jindal—about the high protein drinks.  (ECF

No. 43-1, PageID.815).  This grievance exhausts the high protein drinks claim

against Greiner and Jindal.

The fourth grievance identified by Defendants does not exhaust claims

against Greiner and Jindal.  Grievance ARF-2018-01-0114-28A was submitted on

January 10, 2018 at Step I.[2]  This grievance is specifically and clearly against

Warden Campbell and Health Unit Manager "Mrs. Campbell" for their failure to

intervene in Plaintiff's health care and correct the policies that Corizon and others

put in place, despite his many requests for them to do so.  (ECF No. 43-1,

PageID.755).  This grievance cannot reasonably be read to contain a complaint

against Greiner or Jindal for a medical issue.

### G. Other Matters

In closing, Defendants assert that the following claims should be dismissed

because Plaintiff did not file a grievance on them:

> [1] Defendants have policies and procedures in place to
> give out defective daily assistive living devices; [2] Dr.
> Greiner refused to provide accommodation for a sock
> donner and raised toilet seat; [3] PA Jindal failed to
> address his medical issues and need for new
> accommodation orders; [4] Defendants are "doctor
> shopping" to find a doctor who will agree with them in

---

[2] This grievance was rejected at all three steps as duplicative of grievance 2157.
(ECF No. 43-1, PageID.752, 754, 758).  Defendants did not argue that this
grievance does not exhaust remedies, regardless of who is or is not named, because
of this procedural issue.  However, I note that it is not entirely clear that this
grievance is duplicative of 2157, the grievance about polyneuropathy testing.

order to save money on surgery, and [5] Defendants
refusal to get his complete set of medical records.

(ECF No. 43, PageID.613-14).  Plaintiff disagrees with Defendants' assertion.  He

insists that he did not include any claims in this lawsuit that were not included in a

grievance.  (ECF No. 47, PageID.913).  But, Plaintiff did not point to or provide as

evidence any grievances on these topics that would tend to show that he did in fact

file grievances on these claims.  While Defendants have the initial burden to show

lack of exhaustion, it is Plaintiff's burden to come forward in response with

evidence demonstrating a question of material fact on exhaustion.  He has failed to

do so with regard to these claims.  It is not for the Court to comb the record for

evidence in support of Plaintiff's position.  Therefore, I suggest that these claims

be dismissed without prejudice for failure to exhaust.

Finally, on February 3, 2020, Defendant James Blessman, alleged member

of the MDOC pain committee, filed a concurrence to and adoption of Defendants'

Motion for Partial Summary Judgment.  (ECF No. 52).  He asserts that Corizon,

Greiner, and Jindal's arguments apply equally to him to the extent Plaintiff

intended to grieve the MDOC pain committee.  I recommend that this concurrence

and adoption not be considered here.  Defendant Blessman's arguments on failure

to exhaust should be addressed in the first instance on a motion for summary

judgment, to which Plaintiff should be given an opportunity to respond.

25

In conclusion, I recommend that Defendants' Motion for Partial Summary Judgment be **GRANTED** to the extent that grievances ARF-2018-01-0256-28B and ARF-2018-01-0114-28A be found unexhausted and that the claims listed in Section G, *supra*, be dismissed without prejudice for failure to exhaust. I recommend that Defendants' motion be **DENIED** with respect to the remaining grievances, and that the Court conclude that Plaintiff has fully exhausted the remaining claims.

## IV. CONCLUSION

I recommend that Defendant's Motion for Partial Summary Judgment (ECF No. 43) be **GRANTED IN PART, DENIED IN PART**.

Any objections to this Report and Recommendation must be filed within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987).

26

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Date: September 21, 2020                    s/R. Steven Whalen
                                           R. Steven Whalen
                                           United States Magistrate Judge

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was sent to parties of record on September 21, 2020 electronically and/or by U.S. mail.

                                           s/Carolyn M. Ciesla
                                           Case Manager